[Crim. No. 5352. Second Dist., Div. Two. June 8, 1955.]

THE PEOPLE, Respondent, v. ROBERT CHARLES BAGLEY et al., Defendants; DON RAY BAUCOM, Appellant.

John H. Marshall for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOX, J.—Defendant Baucom was convicted of possession of heroin, in violation of section 11500 of the Health and Safety Code. He appeals from the judgment of conviction and the order denying his motion for a new trial.

In the afternoon of August 10, 1954, Deputy Sheriffs Stahl and Talbot were admitted to apartment No. 107 at 187 South Alvarado, in Los Angeles, by defendant Bagley. On searching the premises the officers found on the edge of the bathtub an eye dropper, two hypodermic needles and a prophylactic containing approximately 3 grams (45 grains) of a brownish white powder which, upon analysis, proved to be heroin. Such paraphernalia is ordinarily used in getting an injection of heroin. Also, they found boxes containing packages of cigarette papers, loose rubber bands, small pieces of paper for making bindles, empty 5-grain gelatin capsules and a prophylactic. Such equipment is used by persons trafficking

in narcotics. The officers found approximately $1,225 in the apartment and on defendant Bagley's person.

Soon thereafter appellant entered the apartment. He was searched for narcotics but none was found. When asked whether he had rented the apartment he stated that he had rented it under the name of Don Cartier. On the witness stand appellant testified that he rented the apartment on August 1st and explained the transaction as follows:

"I rented the apartment for Robert Bagley, who is my friend of long standing and I didn't want to give him the money to rent the apartment because I was afraid he would never rent it. I wanted a place for him to live so I rented the apartment for him and put it under another name because I didn't want it in my name, because I wouldn't be living there in the first place and I didn't want to be liable for the next month's rent."

At various times during the interview with the officers both appellant and Bagley said they had been living there together. The officers found some men's clothing in the apartment. Appellant stated that part of the clothes were his and Bagley acknowledged that some of them belonged to him.

When appellant was first asked whether he knew there were any narcotics in the apartment he remained silent. Later he denied such knowledge and denied that the narcotics found in the bathroom were his. At another time appellant stated he received no money from Bagley, that he merely "delivered" for Bagley, and that he was at liberty to use any amount of heroin he wished.

The officers examined appellant's person. Below the elbow on his left arm, on the inside, they found "numerous scabs or injection marks." One of the officers who was experienced in this field gave the opinion, from the way the scabs appeared, that four or five of them were the result of injections "within the last ten days." The officer also noticed the pupils of appellant's eyes were dilated and that he acted as if he were sleepy. From these circumstances the officer was of the opinion that appellant was under the influence of an opiate. Heroin is, of course, a derivative of opium. Appellant stated to Officer Talbot that he used from one to two grams of the "stuff" per day.

Appellant's story was that he and his wife had been living with her mother in Inglewood; that about the first of August he had an argument with his wife and moved out, taking some of his clothes; and that he moved in with Bagley for

a couple of days; that he was ill; that he called up his wife and arranged to go back to his mother-in-law's home where he stayed until the day of his arrest; and that he came back to the apartment on that occasion for the purpose of getting his clothes. His mother-in-law corroborated his testimony relative to the argument with his wife and his leaving, his illness and return to her home after an absence of a couple of days. She further testified that he remained there most of the time between the 4th and 10th of August. On cross-examination appellant testified that he paid $50 rent for the apartment. He explained why he did not rent the apartment in Bagley's name as follows: ''Q. Why didn't you rent the apartment in Bagley's name? A. Well, Bagley didn't want an apartment under his name because he was on parole and he had an address with the Parole Department and he says, 'Put it in your name or some other name. I don't want it in mine.' Q. So you didn't rent it in Bagley's name because he told you he didn't want it in his name? A. That is right.''

Appellant was informed by his wife, four or five days prior to August 1st, that officers from the sheriff's narcotic detail had inquired as to his whereabouts. He did not, however, call the officers to find out what they wanted.

Appellant testified that none of the money found in the apartment belonged to him. It was Bagley's so far as he knew but he did not know how Bagley got it. At the trial appellant denied having any knowledge that heroin was in the apartment. He also denied telling the officers that he had either used or was free to use the narcotics found there or that he delivered any narcotics for Bagley. He admitted, however, two prior felony convictions.

Bagley admitted he was a user and had a prior conviction of possession of marijuana. He claimed the ownership of the heroin in the apartment.

Appellant's first contention is that ''the evidence is insufficient to sustain the conviction.'' ██ When such an attack is made we must view the evidence in the light most favorable to the successful party in the trial court. (*People* v. *Obersmith*, 129 Cal.App.2d 97, 98 [276 P.2d 19].) ██ When so viewed, it is clear that the evidence, together with the reasonable inferences therefrom, amply supports the implied finding of the jury that appellant had knowledge of and ''joint dominion and control of'' the heroin found by the officers in the apartment and was therefore guilty of possession. (*People* v. *Lama*, 129 Cal.App.2d 391, 393 [276 P.2d 816]; *People* v. *Cuevas*, 131 Cal.App.2d 393, 398 [280 P.2d 381].)

Appellant relies on *People* v. *Antista,* 129 Cal.App.2d 47 [276 P.2d 177]. It is not, however, here controlling. In that case officers went to the appellant's apartment and found the codefendant and another person there. Marijuana was found in the apartment prior to the appellant's arrival. The appellant testified that he had been away from the apartment for a number of hours, and he denied all knowledge of the presence of marijuana. He testified that he was a nonsmoker due to an arthritic condition. There was no evidence that the appellant had had any previous connection with marijuana or narcotics. The appellate court pointed out that in all the cases which had been examined in which a conviction was upheld, there was some incriminating statement or circumstance in addition to the presence of the narcotic indicative of knowledge by the defendant of its presence and of his control of it.

In the instant case there are a number of incriminating circumstances. Appellant rented the apartment under an assumed name and gave an explanation that was less than plausible. When first asked whether he knew there were narcotics in the apartment he remained silent; the appearance of the inside of his left forearm indicated he was a user and that several injections had been made within the last 10 days, which was after he had rented the apartment; he admitted to the officers that he was a user and was free to use such amounts of the narcotic as he wished; his sleepiness and the dilation of the pupils of his eyes caused an officer experienced in the effect of opiates to conclude that he was under the influence of a narcotic. The presence of empty gelatin capsules, and other related paraphernalia, together with the rather considerable amount of money that was found on the person of Bagley and in the apartment, particularly in view of his recent impecuniosity, immediately give rise to an inference that narcotics were being peddled from these premises. Thus appellant's statement to the officers that he delivered for Bagley takes on added significance. Finally, appellant's failure to contact the officers who were inquiring as to his whereabouts gives rise to an inference that he had a guilty conscience. These incriminating circumstances clearly distinguish this case from the Antista case.

Appellant vainly argues that the court committed prejudicial error in refusing to instruct the jury on the subject of alibi. The jury was instructed on the presumption of innocence, reasonable doubt, and burden of proof; also, they

were told that if the evidence is susceptible of two constructions, one pointing to guilt and one to innocence, each of which appears reasonable, the jury must adopt that which points to innocence; and that the jury cannot find defendant guilty unless the proved circumstances are consistent with the hypothesis of guilt and irreconcilable with any other rational conclusion. The testimony and the reasonable inferences therefrom definitely established appellant's connection with the apartment and the heroin found therein. It is implicit in the jury's verdict that they believed such evidence and did not believe the alibi story of appellant and his witnesses. As this court observed on this precise point in *People* v. *Jackson*, 125 Cal.App.2d 776, 780 [271 P.2d 196], ''To have given an instruction on that subject would not have added any credence to their story and a different verdict would not have resulted.'' Hence, there was no prejudice in the court's failure to give an instruction on the subject of alibi, particularly in view of the instructions actually given. (*People* v. *Haywood,* 109 Cal.App.2d 867, 872 [241 P.2d 665].)

The judgment and order denying motion for a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.