[Crim. No. 3399.   First Dist., Div. One.   Dec. 20, 1957.]

THE PEOPLE, Respondent, v. HAROLD EUGENE HANCOCK, Appellant.

[Crim. No. 3400.   First Dist., Div. One.   Dec. 20, 1957.]

THE PEOPLE, Respondent, v. ANDREW CRAYTON, Appellant.

306

Ernest W. Schmidt, under appointment by the District Court of Appeal, for Appellant Hancock.

John R. Lamoreaux, under appointment by the District Court of Appeal, for Appellant Crayton.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

BRAY, J.—Consolidated appeals by defendants from jury conviction of consolidated separate charges of violation of section 11500, Health and Safety Code (possession of narcotics) and from the order denying new trial.

QUESTIONS PRESENTED

1. Sufficiency of the evidence (a) as to Hancock; (b) as to Crayton.

2. Admissibility of puncture marks and of prior use of narcotics.

EVIDENCE

Salinas Police Department Officer Jones with Lieutenant Wilson went to room 9, Lake Hotel, without a search warrant or warrant of arrest. That room was registered to defendant Hancock. Jones stood on an outside balcony about 3 feet from the room's window. The window was open about 4 inches but the shade was down and Jones could not see in. He heard two distinct voices in there. Wilson went to the door of the room. Jones heard a knock on the door and a voice within the room asked who was at the door. Wilson replied "Wilson of the Police Department." Then the window shade was pulled aside and an object was tossed out of the opening. Jones, by the illumination afforded by a small porch light, watched its flight through the air and saw where it landed. Jones then went around to the room's door and told Wilson that an object had been thrown out. Jones then retrieved the object which proved to be wrapped bindles of heroin.

Defendant Crayton opened the door to Wilson who entered and commenced to talk with defendants who were the only persons in the room. After retrieving the heroin Jones returned to the room. After inspecting the bindles and concluding that they possibly contained heroin, Wilson placed defendants under arrest for possession of narcotics. Both denied any knowledge of narcotics. A search of room 9 revealed no narcotics or paraphernalia. Defendant Crayton's room (No. 16) was then searched. In a bureau drawer an ordinary eye dropper was found. A subsequent test showed it to have no traces of narcotics. The dropper's rubber bulb was secured to the glass by a rubber band with the other end having a plastic gasket. This is an apparatus used by addicts to inject heroin. The eye dropper was admitted solely against Crayton. At the station, defendant Hancock denied any knowledge of the heroin or throwing anything out of the window. Crayton made similar denial but stated that Hancock had thrown something out of the window.

At the time of arrest Wilson inspected defendants' arms. Hancock had puncture marks on the inner elbow of the right arm. Crayton had numerous puncture marks on the main

vein of his left arm. The veins on the arms of both defendants were discolored. Wilson testified that continued use of narcotics through that type of puncture will discolor the vein. Crayton told Wilson he had used narcotics from 1947 to 1951 but thereafter only when given some at a party. He had not used any since November 1. (These events occurred November 13.) Hancock stated that he had used narcotics off and on since 1947, the last time being one week before.

Hancock testified that he occupied room 9, and was in bed listening to the radio and assisting Crayton in writing a letter to an insurance company. He answered Wilson's knock at the door. Five or six minutes later Jones came in and handed Wilson an object. Wilson then told Hancock to dress and stated that both defendants were under arrest. Hancock denied having narcotics in his room or throwing anything out the window or seeing anything thrown.

Crayton testified that he went to Hancock's room to obtain stationery; that he opened the door for Wilson. He denied that he threw anything out the window or saw anything thrown or that he had told Wilson that Hancock threw something out. He said that he told Wilson that it was "possible" that Hancock "could have thrown something." He admitted owning the eye dropper. He had obtained it from a druggist for a prescription obtained from his doctor for his eyes. He had been in an automobile accident which required a facial operation leaving scar tissue. The reason he put the rubber band and plastic on the dropper was because in cleaning out some dresser drawers he found them and threw everything on top of the dresser and "I just put it on there."

At the interview between Wilson and Crayton at the police station Wilson wrote a narrative statement of Crayton's answers. When the statement was typed Crayton refused to sign it. At the trial he stated that he refused to sign because the typed statement was not true. He first stated that he *thought* he had told Wilson that the typed statement was not true; then he said that he was sure he told Wilson that. He then said that he told Wilson that he had once had a statement before him to sign which was not true and he did not want to incriminate anybody by signing a statement that was not true. He did not, however, tell Wilson in what respect the typed statement was untrue. The credibility of Crayton and Wilson was a matter for the jury. Crayton was convicted in 1949 for transporting narcotics.

The owner of the hotel testified that there was no light bulb in the porch light fixture the night in question.

## 1. *Sufficiency of the Evidence.* (a) As to Hancock.

In reviewing the record where the contention is insufficiency of the evidence, the evidence must be viewed in the light most favorable to support the judgment. (*People* v. *Bagley* (1955), 133 Cal.App.2d 481, 484 [284 P.2d 36].)

And where the circumstances in evidence are such as would reasonably justify an inference of guilt, the fact that an inference of innocence might also just as reasonably have been predicated on such circumstances does not present a question of law reviewable by an appellate court. (*People* v. *Torres* (1950), 98 Cal.App.2d 189 [219 P.2d 480].) However, mere presence at the scene of the crime standing alone is not sufficient, but it is necessary to show a physical or constructive possession with actual knowledge of the presence of the narcotic. (*People* v. *Foster* (1953), 115 Cal.App.2d 866, 868 [253 P.2d 50].)

It is clear that one, if not both, of the defendants were guilty of possession. As to Hancock, the heroin came from his room while he was in it with Crayton. Hancock was on the bed about 12 to 14 inches from the window. Hancock was a user of narcotics, both by his own admission and the marks on his arms. It is unreasonable to believe that if he did not throw the narcotic out the window, it could have been done without his seeing it. His denial of either is the type of defense which in *People* v. *Foster, supra,* 115 Cal.App.2d 866, was held to show guilty knowledge and to justify a conviction of possession.

(b) As to Crayton.

The prosecution relies upon the following facts as basis for the implied finding of the jury that Crayton was in joint possession of the heroin with Hancock: Crayton's presence in the room, his statement to the officer that he saw Hancock throw something out of the window, his change of story at the trial in stating that he had merely said "it was possible" that Hancock could have thrown something, his denial of seeing the narcotic thrown, and the following circumstances which proved him to be an addict: his admission of its use, the needle marks on his arm, the ownership of the eye dropper apparatus, and a conviction in 1949 of transporting narcotics. Boiled down, the only evidence purporting to show joint control and dominion over the heroin is the fact that he, an addict, was in the room from which the heroin was thrown and that he changed his story as to seeing something thrown

out the window. ■ The mere fact that an addict is in a room from which a narcotic is thrown is not sufficient to prove that he had any dominion or control over it. ■ Mere presence at the scene of the crime standing alone is not sufficient to justify a finding of guilt. (*People* v. *LeGrant*, 76 Cal.App.2d 148, 153 [172 P.2d 554]; *People* v. *Foster, supra*, 115 Cal.App.2d 866, 868.) Nor was the change in story sufficient to prove it. At most the change proved that he falsified as to seeing Hancock throw an object out the window. The fact that he was attempting to protect Hancock is not sufficient to justify a finding of dominion and control. It may be that Crayton went to Hancock's room to purchase heroin, but to hold that he had any dominion or control over the package which the evidence indicates Hancock threw out the window could only be based upon surmise and conjecture.

■ The crime of possession of narcotics requires a physical or constructive possession with actual knowledge of the presence of the narcotic substance. (*People* v. *Gory*, 28 Cal.2d 450 [170 P.2d 433].) ■ "Possession" means " 'one under the dominion and control of defendant.' " (*Idem*, p. 455.) The circumstances in this case were on all fours with those in *People* v. *Foster, supra*, 115 Cal.App.2d 866, where the court held the evidence insufficient to prove joint control or dominion over narcotics thrown from the window of a car. There the officers started to follow an automobile which they suspected had been used in the commission of thefts from other automobiles. When the officers flashed their red light and sounded their siren, a small object which proved to contain heroin dropped from the right front window. The three defendants were riding in the front seat of the car and were seen by the officers to be moving about but no throwing motion by any of them was observed. All three denied throwing the object or seeing it thrown. Foster, one of the defendants, first testified that the right front window of the automobile was closed. He was positive of the fact because the night was cold. The next day he changed his testimony, claiming that he was confused by the prosecutor's questions and manner. The trial judge remarked that he had observed no evidence of confusion and this remark was neither objected to nor challenged. It was held that "From this clumsy attempt to manufacture a defense the jury might reasonably infer the guilty knowledge necessary to find that Foster was the one of the three defendants who had possession of the heroin." (P. 869.) The trial court had granted a new trial as to one

of the defendants. The appellate court held that to convict the third defendant of possession would be "to permit a conviction on the wildest sort of surmise and conjecture." (P. 868.) We see no difference in the facts as to the two defendants other than Foster and the facts as to Crayton here. It should be pointed out that Crayton's change of story is entirely different from that of Foster. Foster appeared to be attempting to manufacture a defense not only for the others but also for himself, while Crayton's change was to help a codefendant. Moreover, Foster's was a change in his sworn testimony. Here some significance should be placed upon the fact that immediately after making the statement to the officer Crayton refused to sign the written narrative statement on the ground that it was incorrect and he did not want to incriminate anyone by signing an untrue statement. Whether Crayton changed his story depends upon the accuracy of the officer's repetition of his first statement. *Davis* v. *Robinson*, 50 Cal.App.2d 700, 704 [123 P.2d 894], holds that uncorroborated statements are of very little evidentiary value taken alone. It is " '. . . the weakest of testimony that can be produced.' " (P. 704.) Crayton's change of story is not of the type from which in *People* v. *Torres, supra*, 98 Cal.App.2d 189, it was held guilty knowledge could be inferred. There "each defendant gave a different account as to their activities on the night in question and as to the transportation of claimed passengers or 'hitch-hikers,' and their seating arrangements . . ." (P. 193.) The case gives the test of the sufficiency of the evidence as being whether the evidence logically, naturally and by reasonable inference establishes the fact of joint dominion and control. ▇ The evidence here under such test fails to show Crayton guilty of possession.

Nor is the situation similar to that in *People* v. *Hood*, 150 Cal.App.2d 197 [309 P.2d 856]. There, the officers having information that Hood was dealing in narcotics, went to his apartment. Going upstairs in the building they met Hood's mother who told them Hood was in his bathroom. When the officers entered his apartment and knocked on the bathroom door Hood threw a package containing heroin out the bathroom window. In the bathroom with Hood was the defendant Mrs. Lewis. The court held that the following circumstances justified a reasonable inference that the defendant Lewis either had joint dominion and control of the contraband or that she was aiding and abetting Hood. "Just what her rela-

tion was to defendant Hood does not appear. However, she was with him, in the restricted space of a bathroom under the unusual circumstance of the door being locked. Hood was undressed except for the boxer-trunks which he was wearing. When the officers knocked on the door neither Mrs. Lewis nor Hood made any response. On the other hand, Hood, who was standing near the window when the officers entered, had disposed of a package containing heroin by throwing it out of the window." (P. 201.) Mrs. Lewis was fully clothed, standing by the wash basin. These circumstances are quite different from those in our case. Here Crayton was approaching the door to open it when the heroin was thrown out the window. It was possible that Crayton may not have seen it thrown, while in the Hood case the room was so small that joint control was obvious.

2. *Prior Use and Puncture Marks.*

██ An essential element of the crime of possession of narcotics is knowledge of the narcotic character of the article possessed (*People* v. *Winston* (1956), 46 Cal.2d 151, 161 [293 P.2d 40]) and evidence of prior use of narcotics and presence of needle marks is admissible for such purpose. (*People* v. *Casas* (1946), 77 Cal.App.2d 255, 257 [175 P.2d 19].) Defendants after their objections to evidence of prior use and of the puncture marks had been overruled stated that their defense was not possession without knowledge but a denial of possession at all. In *People* v. *Gin Hauk Jue* (1949), 93 Cal.App.2d 72 [208 P.2d 717], where the defense was as here denial of possession, such evidence was held admissible as "a circumstance showing 'possession' by the defendant . . ." (P. 74.) In *People* v. *Ochoa* (1953), 118 Cal.App.2d 566 [258 P.2d 104], where defendants denied throwing marijuana from their car, similar evidence was admitted not only to show a required element of possession, but also to overcome the defendant's claim that the officers "planted" it. The testimony of the hotel keeper that there was no light where Officer Jones said there was would indicate that defendants were intimating that Jones "planted" the narcotics here. (See also *People* v. *Perez*, 128 Cal.App.2d 750 [276 P.2d 72].) The prosecution must prove knowledge and the mere fact that defense counsel makes a statement as to their defense does not prevent the introduction of such evidence.

██ Defendants' contention that the court of its own motion should have given an instruction limiting the effect of this evidence is answered in *People* v. *Johnson*, 153 Cal.

App.2d 564, 569 [314 P.2d 751], where the court said concerning a similar contention "It is true that a cautionary instruction would have been appropriate, and that none was given. But appellant made no request for such an instruction. Without a request the court was not bound to give it of its own motion. (*People* v. *Holbrook*, 45 Cal.2d 228 [288 P.2d 1].)"

In view of our determination that the evidence, including Crayton's statement to the officer, the eye dropper apparatus, and Crayton's admission of a prior conviction, is insufficient to sustain the conviction of Crayton, we deem it unnecessary to consider his contention that the statement, the apparatus and the prior conviction were not admissible, and that the search of his room was improper.

The judgment and order as to Crayton are reversed. The judgment and order as to Hancock are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court in No. 3400 was denied February 11, 1958.