[Crim. No. 6742. In Bank. Feb. 3, 1961.]

THE PEOPLE, Respondent, v. JOHNNY T. REDRICK,
Appellant.

Ellery E. Cuff, Public Defender, James L. McCormick, John M. Moore and Richard W. Erskine, Deputy Public Defenders, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

SCHAUER, J.—Defendant appeals from a judgment of conviction of unlawfully possessing heroin (Health & Saf. Code, § 11500) and from an order denying his motion for new trial. Jury trial was properly waived and by stipulation the

cause was submitted on the testimony in the transcript of the preliminary hearing, together with additional testimony of one of the arresting officers. Defendant contends that the evidence is insufficient to show that he had that knowledge of the presence of the drug which is an essential element of the crime of possession. ▮▮ Although the evidence does not appear very convincing, the question of the persuasive effect of such· evidence is not for an appellate court. And we cannot say that the circumstances hereinafter related, as a matter of law, at most give rise to a mere suspicion and do not permit a reasonable inference of guilt. Accordingly, the judgment and order appealed from should be affirmed.

During the month of September 1959, defendant lived in and managed a rooming house owned by Henry Smith. About 20 or 30 feet from defendant's room, and separated from it by a hall and a community living room, was a storeroom locked with a padlock. The instant prosecution followed the hereinafter described discovery by the police of heroin in this storeroom on September 28, 1959. Concerning this storeroom Smith testified as follows:

"Q. Mr. Smith, did you use the storeroom from time to time? A. Well, we put rugs and things that was left, in there —and that's about all.

"Q. Who else used the storeroom besides yourself? A. Oh, Johnny [defendant] and myself.

"Q. Did anyone else have the key to the storeroom? A. No, just the two of us."

It further appears, however, that other persons could have had unauthorized access to the storeroom. Smith testified that he kept the only key hanging in his shop, which was in the same block as the rooming house. Here, so far as the evidence shows, the key was available to anyone who might choose to "borrow" it.

More directly, Smith testified that he had given the key to the defendant from time to time; a "night or two" or "three or four days" before September 28 Smith noticed that the key was not in his shop and asked defendant if he had it; defendant "said Yes . . . and I [Smith] didn't think any more about it."

At 9 :15 a. m. on September 28 Police Officer Hanks knocked at the door of defendant's room, informed defendant that he was an officer, and "told the defendant that I understood that he was peddling narcotics; he denied that. I asked him if he had any narcotics in his room, and he stated he did not. I then asked him if he would mind if I would search his room, and

he stated he would not. And I searched it and found nothing
. . . ." Officer Hanks "asked the defendant if he had a key
to [the storeroom] . . . and he stated he did not."

The officer then went to the nearby place of business of
Mr. Smith. He asked Smith for the key and Smith found
that "It was gone." Smith gave the police permission to force
the storeroom lock. In the storeroom Officer Hanks found a
folding bed in which was a coin purse containing ten bindles
of heroin. At about 10:15 a. m. on the 28th the officer placed
defendant under arrest. Defendant "denied any knowledge
of the bindles that I found. He denied having a key. He did
state that approximately three weeks ago he had had the key
to that storeroom, but did not have it in his presence at this
time."

Officer Grennan testified that after defendant's arrest they
had the following conversation: "I stated to him, 'How come
you started fooling with narcotics again, Johnny?' He says,
'Well, when I got out of the joint [a reference to prior con-
victions and service of a prison term], there wasn't any work
to be had, and what could I do? I didn't want to starve;
so I went back to fooling with narcotics again.' I further
questioned him as to whom he had been scoring [buying]
from, and he told—he'd been scoring from a fellow by the
name of 'Blackburn.' I said, 'How much do you score at [a]
time?' And he said, 'Sometimes it varies. Sometimes a
half a piece and sometimes a piece [ounce].' " In his con-
versation with Officer Grennan defendant denied that the
heroin found in the storeroom was his, and said that he had
been in possession of the storeroom key but was not in pos-
session thereof at the time of his arrest.

█ The People correctly agree with defendant that to
establish unlawful possession of narcotics it must be shown
that the accused exercised dominion and control over the drug
with knowledge of its presence and narcotic character. (*People*
v. *Winston* (1956), 46 Cal.2d 151, 158 [9, 10] [293 P.2d 40] ;
*People* v. *Gorg* (1955), 45 Cal.2d 776, 780 [3] [291 P.2d 496] ;
*People* v. *Gory* (1946), 28 Cal.2d 450, 454 [2] [170 P.2d
433] ; *Matter of Yun Quong* (1911), 159 Cal. 508, 515 [114
P. 835, Ann.Cas. 1912C 969].) They further correctly agree
that proof of opportunity of access to a place where narcotics
are found, without more, will not support a finding of un-
lawful possession.

The following decisions of District Courts of Appeal are
illustrative of reversals of convictions of unlawful possession
by application of the last stated rule or variance thereof:

*People* v. *Stanford* (1959), 176 Cal.App.2d 388, 391 [4] [1 Cal.Rptr. 425] [defendant was in the house of a narcotics dealer and probably was in the bathroom with the dealer and another man at the time the latter consummated a sale; held, there was no evidence that the narcotics were under defendant's control] ; *People* v. *Fernandez* (1959), 172 Cal.App.2d 747, 754-755 [6-7] [342 P.2d 309] [police found a narcotic in a suit which had been cleaned and awaited pressing in defendant's cleaning shop; other persons had access to the suit; defendant had made an unlawful sale of narcotics at the shop five days before; held, there was no evidence that defendant knew the narcotic was in the suit] ; *People* v. *Tabizon* (1958), 166 Cal.App.2d 271, 273 [2, 3] [332 P.2d 697] [defendant was in the room of an acquaintance with whom he had stayed overnight from time to time; a rubber container of narcotics was on top of a chest and another was in a drawer; held, there was no evidence from which guilty knowledge could be inferred] ; *People* v. *Hancock* (1957), 156 Cal.App.2d 305, 309 [4a] [319 P.2d 731] [defendant, a user of narcotics, was in the room of another user who threw a narcotic out the window when the police knocked and identified themselves; defendant told the officers he saw his companion throw the object but at the trial testified that he saw nothing thrown; held, the evidence did not show that defendant had dominion over the thrown drug] ; *People* v. *Antista* (1954), 129 Cal. App.2d 47, 52 [4] [276 P.2d 177] [police, in defendant's absence, found a user of narcotics in his apartment, marijuana cigarette butts in his ashtray, and marijuana in storage spaces which defendant testified he did not use; defendant customarily left his key under a doormat and his friends were accustomed to enter the apartment in his absence; held, the evidence of defendant's knowledge of the presence of the weed was insufficient] ; *People* v. *Savage* (1954), 128 Cal.App. 2d 123, 124 [1] [274 P.2d 905] [defendant, a nonuser, and his guest were arrested in defendant's apartment and taken to jail because they were having a noisy party; the arresting officers searched and found no evidence of recent use of narcotics but did find an old marijuana cigarette butt on the floor; defendant's cleaning woman said that two days later she found a package of marijuana cigarettes hidden in defendant's davenport; held, there was no sufficient evidence that defendant possessed the weed] ; *People* v. *Barnett* (1953), 118 Cal.App.2d 336, 339 [1] [257 P.2d 1041] [the police gave an operator marked bills with which to buy heroin but did not keep her under surveillance; an hour and a half later

she returned with heroin; the police went to defendant's apartment and found the marked bills among other bills in his wallet; defendant said he did not know where he got the marked bills; there was heroin in a hall closet near the apartment; the closet could be opened with any key or a dime; held, "the evidence is insufficient to prove the defendant sold the heroin to the operator or that he had possession or knowledge of the presence of heroin in the closet"]; *People v. Foster* (1953), 115 Cal.App.2d 866, 868 [4] [253 P.2d 50] [defendant was sitting on the right of the front seat of a car driven by A, with B sitting between them; at the sound of the siren of a police car they stopped, all three moved about, and a small package of heroin came from the right front window and fell to the street; each of the three denied that he had thrown or seen anything thrown from the car; held, to infer guilty knowledge of defendant from his testimony that he saw nothing thrown from the car "would be to permit a conviction on the wildest sort of surmise and conjecture"]; *People v. Bledsoe* (1946), 75 Cal.App.2d 862, 864 [171 P.2d 950] [on the night before defendant's arrest his car was not in its usual parking place on the street; he reported to the police that it was missing, and later X used it in a robbery; the next afternoon the police found defendant and a friend seated in the car, which was in its usual parking place; marijuana cigarettes were stuffed beside the seat cushion; held, there was insufficient evidence of knowledge of the weed's presence].

As might be expected, no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control. The cases next cited illustrate evidential factors which, added to nonexclusive dominion, will support a finding of knowing possession.

In *People v. Mateo* (1959), 171 Cal.App.2d 850, 853 [5] [341 P.2d 768], and *People v. Flores* (1957), 155 Cal.App.2d 347, 348 [1] [318 P.2d 65], where the question of the sufficiency of the evidence might otherwise have appeared rather close, the appellate court in affirming particularly directed attention to the fact that the drug was found among defendant's personal effects. And in the following cases where the sufficiency of the evidence might otherwise have been doubtful, it was strengthened by a showing of consciousness

of guilt: *People* v. *Magdaleno* (1958), 158 Cal.App.2d 48, 52 [5] [322 P.2d 89] [defendant fled when he saw the police and gave dubious purported exculpatory explanations which could be found intentionally false]; *People* v. *Ross* (1957), 149 Cal.App.2d 287, 289 [3] [308 P.2d 37] [defendant said that he had a roommate X who shared the room where a narcotic was hidden, but no other evidence of the existence of X was produced; the operator of the premises who rented the room to defendant testified that he had never seen another occupant of the room although defendant had signed the register with the name X as well as his own name]; *People* v. *Bagley* (1955), 133 Cal.App.2d 481, 484-485 [2] [284 P.2d 36] [defendant rented the apartment where narcotics were found under an assumed name and gave a "less than plausible" reason for having done so; although he had known that narcotics officers were looking for him for four or five days before they found him at the apartment, he had not got in touch with them]; *People* v. *Foster* (1953), *supra*, 115 Cal.App.2d 866, 868-869 [5] ["clumsy attempt to manufacture a defense"]; *People* v. *Bass* (1952), 110 Cal.App.2d 281, 284 [1b] [242 P.2d 685] [when arrested defendant had the key to a shack in which he said he had not been for 90 days; he said he did not know what the key was for or how he obtained it, and he gave evasive testimony as to when, how and why he got the key; in the shack the police found papers belonging to defendant and narcotics].

In the present case there is clearly sufficient evidence that defendant at about the time of the charged offense had knowingly possessed some narcotics, for he admitted to Officer Grennan that he "went back to fooling with narcotics again" and had bought from "Blackburn" in quantities of "Sometimes a half a piece and sometimes a piece." But this alone is not enough to show that defendant knowingly possessed the ten bindles of heroin which Officer Hanks found in the storeroom and which are the subject of the present conviction. However, added to the foregoing admissions of possession of narcotics in general are the following circumstances as to defendant's statements and conduct concerning the key to the storeroom, which circumstances permit the inference that defendant manifested consciousness of guilt as to (and therefore knowledge of) the presence of the narcotics in the storeroom to which he had nonexclusive access: A few days before defendant's arrest on September 28 he told his employer, Smith, that he (defendant) had the store-

room key, but on the 28th he told the arresting officers that he had not had it for three weeks. Furthermore, defendant did not explain how the key had left his possession. As manager of the rooming house defendant would be expected to know what he had done with the key and not to treat it as of so little importance that it could pass from his keeping without his being aware of its disappearance. From defendant's failure to explain what happened to the key the trier of fact could infer that he had no exculpatory explanation (*People* v. *Adamson* (1946), 27 Cal.2d 478, 488-489 [10, 11] [165 P.2d 3]) and that his failure to produce or account for it was due to his guilty knowledge of the presence of contraband in the storeroom.

Defendant points to the following possibilities suggestive of his innocence: So far as the evidence shows he had managed the rooming house only during September, and the heroin could have been concealed in the storeroom long before defendant had access to it. The key hung in Smith's shop, a place open to the public, and the storeroom opened off a community living room, so that unauthorized persons might have taken the key, perhaps had a duplicate made, and entered the storeroom. The padlock may have been of a kind which almost any key would open. Smith, the owner of the premises where the drug was found, had "every reason to try to place the responsibility for the narcotics on someone other than himself."

 The credence and ultimate weight to be given the evidence of the various particular circumstances are of course for the trier of fact, and "It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." (*People* v. *Robillard* (1960), *ante,* pp. 88, 93 [1, 2] [10 Cal.Rptr. 167, 358 P.2d 295].)

 The rule that "to justify a conviction on circumstantial evidence the facts and circumstances must not only be entirely consistent with the theory of guilt but must be inconsistent with any other rational conclusion" (*People* v. *Yrigoyen* (1955), 45 Cal.2d 46, 49 [3] [286 P.2d 1]; *People* v. *Bender* (1945), 27 Cal.2d 164, 174-175 [1, 2] [163 P.2d 8]) is primarily for the guidance of the trier of fact. Such rule would be applicable to appellate review of a conviction only

where, giving to each circumstance in evidence all the legal effect toward guilt which it could support, it would still appear that a rational conclusion of innocence was not excluded. ■ Circumstantial evidence is like a chain which link by link binds the defendant to a tenable finding of guilt. The strength of the links is for the trier of fact, but if there has been a conviction notwithstanding a missing link it is the duty of the reviewing court to reverse the conviction.

■ The existence of possible exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify this court's rejecting the determination of the trier of fact that defendant is guilty unless on appeal it "be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Tom Woo* (1919), 181 Cal. 315, 326 [1] [184 P. 389].) While on the record here it may be that the evidence of guilt is not wholly persuasive *to us,* under the above stated analysis of the *legal sufficiency* of such evidence and the foregoing principles of appellate review, we cannot say that a link in the chain of essential proof is missing; hence it is not within our province to interfere with the determination of the trier of fact.

For the reasons above stated, the judgment and order appealed from are affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.