[Crim. No. 11945.   In Bank.   May 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES HUGH SHOWERS, Defendant and Appellant.

Paul A. Jacobs, under appointment by the Supreme Court, for Defendant and Appellant

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—On April 15, 1966, after a trial without a jury, defendant was convicted of violating Health and Safety Code section 11500, possession of heroin. He has appealed from the resulting judgment.

Defendant filed notice of appeal on April 15, 1966. It subsequently appeared that the court reporter's notes were unavailable and a transcript of the proceedings could not be

prepared. A hearing was held on October 21, 1966, in which the reporter testified that her notes were inadvertently destroyed.

On April 13, 1967, the Attorney General moved the Court of Appeal pursuant to ''rule 36(b)'' of the Rules of Court to remand the case to the superior court for the preparation of a settled statement in lieu of a reporter's transcript. Over defendant's objection the motion was granted.

The settled statement reads as follows:

''Mary C. Brown was called as a witness for the People and she testified that she resides at 11540 Balboa Street, Granada Hills, County of Los Angeles, and that on January 3, 1966, she saw the appellant James Hugh Showers and codefendant Don Leon Showers, and a third person in a car in front of her premises. They had been stopped by the police, and as they alighted from the car, she noticed that the third person (later identified as one Larry Oliver) started to shake his clothes as if he were dropping something. Mrs. Brown did not continually observe appellant or codefendant Don Leon Showers and could not say whether they dropped or threw anything during this period of time. There is a patch of ivy in the parkway in front of her house which measures approximately 60 feet by 4 feet and is approximately 8 inches thick. After the people left, she noticed that the appellant returned that same evening and started to search through the ivy. He was accompanied by an unknown female at that time. The following day, at about 11:00 a.m., Mrs. Brown saw the appellant return to the area and hunt through the ivy for 15 minutes. About 1:00 p.m., the same day, the appellant, the codefendant Don Leon Showers, and a third male appeared in front of the premises and searched through the ivy for about 15 minutes. At this time the police were called.

''Officer Gaida of the Los Angeles Police Department testified that he observed the appellant and the codefendant Don Leon Showers in a car, together with one Larry Oliver, in the vicinity of the residence of Mrs. Brown on January 3, 1966. The automobile was stopped because this was a high frequency daytime burglary area and the officer had observed the automobile cruising through an alley back and forth very slowly. Investigation revealed that codefendant Don Leon Showers was wanted on a traffic warrant and he was placed under arrest and taken to the police station. The appellant

and Larry Oliver were released at the scene. This was the incident which Mrs. Brown observed when she first saw the appellant and the codefendant in front of her house.

"On January 4, 1966, at about 1:15 p.m., Officer Gaida received a call to proceed to the Balboa residence of Mrs. Brown. He saw the appellant and codefendant Don Leon Showers and a third person (later identified as Leopoldo Diaz) searching through the ivy. The officer started searching in the area together with Officer Prieto. Within a minute or two Officer Prieto found a blue balloon containing a powdery substance resembling heroin. The balloon was found within two feet from the location where the appellant had been searching. The appellant and the codefendant Don Leon Showers were placed under arrest and taken to the police station.

"On cross-examination, Officer Gaida agreed that there was an automobile parked adjacent to the ivy and accepted the location of the automobile as it was positioned in a not-to-scale diagram of the scene. He also agreed that the appellant was by the automobile at the time he was observed to be searching the ivy by the officer. It was stipulated that the chemist testified that the item within the balloon contained heroin.

"The appellant testified that when he was stopped on January 3, 1966, in front of Mrs. Brown's house, the police officers searched the automobile and their persons and no contraband was found. He said that as they were leaving the scene, he was told by Larry Oliver, that he, Larry Oliver, had lost $50.00 near the ivy patch, and the reason why he, the appellant, went back to the location and searched through the ivy was to find the money. Larry Oliver told him that he was not going back there to look for the money because that is where the police stopped him. The appellant further testified that he was searching in the ivy a substantial distance away from the point where Officer Prieto recovered the heroin.

"Mrs. Brown was called as a defense witness and testified that she saw Police Officer Prieto bend down in the ivy at a location which would have been approximately 14 feet away from the location where the appellant had been searching beside the parked automobile.''

Defendant contends that the evidence does not justify the finding that he knowingly possessed heroin.

■ "Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control

over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic." (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].)

There is substantial evidence which meets the two requirements of guilty knowledge. Defendant was searching for something in the ivy. He testified that he was looking for the $50 which Larry Oliver told him he had lost. Defendant claimed that Larry never returned to look for the money "because that is where the police stopped him." No money was found, nor did the trial judge believe that any money was ever lost. In the circumstances defendant's explanation for his three visits to the ivy patch could be found by the trier of fact to be a fabrication. False statements regarding incriminating circumstances constitute evidence which may support an inference of consciousness of guilt. (E.g., *People* v. *Redrick,* 55 Cal.2d 282, 288-289 [10 Cal.Rptr. 823, 359 P.2d 255]; *People* v. *Osslo,* 50 Cal.2d 75, 93 [323 P.2d 397]; *People* v. *Ortiz,* 185 Cal.App.2d 622, 624 [8 Cal.Rptr. 494]; *People* v. *Bagley,* 133 Cal.App.2d 481, 484-485 [284 P.2d 36]; *People* v. *Foster,* 115 Cal.App.2d 866, 868 [253 P.2d 50].) In the instant case, defendant's explanation for his search could be viewed as implausible, and under the circumstances there was substantial evidence that he knew there was a balloon of heroin somewhere in the ivy and that is what he was looking for when arrested by the police.

It is implicit that either defendant, his brother or Larry Oliver was responsible for the presence of the heroin in the ivy patch. Since there is no evidence that these persons jointly possessed the narcotic (cf. e.g., *People* v. *Stanford,* 176 Cal. App.2d 388, 391-392 [1 Cal.Rptr. 425] (accused in house when narcotic sale consummated); *People* v. *Hancock,* 156 Cal.App.2d 305, 309-310 [319 P.2d 731] (accused in room with a known user when narcotics were thrown out a window); *People* v. *Foster, supra,* 115 Cal.App.2d 866, 868 (accused in vehicle with two others one of whom threw narcotics out a window)), there must be substantial evidence that defendant alone possessed the narcotics.

Possession may be actual or constructive. (E.g., *People* v. *White,* 50 Cal.2d 428, 431 [325 P.2d 985]; *People* v. *Prescott,* 257 Cal.App.2d 843, 845 [65 Cal.Rptr. 366]; *People* v. *Hokuf,* 245 Cal.App.2d 394, 397 [53 Cal.Rptr. 828].) The accused has constructive possession when he main-

tains control or a right to control the contraband. ▮ Possession may be imputed when the contraband is found in a location which is immediately and exclusively accessible to the accused and subject to his dominion and control. (E.g., *People* v. *Finn,* 232 Cal.App.2d 422, 426 [42 Cal.Rptr. 704] (in defendant's bathroom); *People* v. *Van Valkenburg,* 111 Cal. App.2d 337, 340 [244 P.2d 750] (in defendant's mattress); *People* v. *Noland,* 61 Cal.App.2d 364, 366 [143 P.2d 86] (in a vase in defendant's room).) ▮ Even if the accused does not have exclusive control of the hiding place, possession may be imputed if he has not abandoned the narcotic and no other person has obtained possession. (*People* v. *Cuellar,* 110 Cal. App.2d 273 [242 P.2d 694] (defendant buried the narcotic on a public playground covering the hiding place with leaves); *People* v. *Bigelow,* 104 Cal.App.2d 380, 385 [231 P.2d 881].) ▮ The accused is also deemed to have the same possession as any person actually possessing the narcotic pursuant to his direction or permission where he retains the right to exercise dominion or control over the property. (E.g., *People* v. *White, supra,* 50 Cal.2d 428, 431; *People* v. *Blunt,* 241 Cal.App.2d 200, 204 [50 Cal.Rptr. 440]; *People* v. *Graves,* 84 Cal.App.2d 531, 534-535 [191 P.2d 32].)

▮ When the doctrine is applicable, the accused is deemed to have *present* constructive possession of the property even though he does not have actual possession. In the instant case, it cannot be said that he constructively possessed the contraband *on January 4.* Defendant's access to the ivy patch was not exclusive nor did he maintain control over the location. Unlike in *People* v. *Cuellar, supra,* 110 Cal.App.2d 273, the narcotic was not hidden. When the officers stopped the vehicle, the heroin was thrown into the ivy apparently with the intent to abandon it *at that time.* Any subsequent intent to recover the narcotic could not reinstate possession. Hence, defendant could not be convicted of possession of heroin on the theory that he constructively possessed the heroin on January 4.

To sustain the conviction there must be substantial evidence that defendant actually possessed the heroin on January 3. The only conduct distinguishing defendant from his brother and Larry Oliver related to the search for the heroin. Defendant returned three times to search, his brother returned only once, and Larry Oliver never returned. ▮ Ordinarily, it can be inferred that the person who first returned to search

and who searched the most times was the one who dropped the narcotics. When such an inference may reasonably be made the conviction must be affirmed even though other inferences may similarly be drawn pointing to innocence. (*People* v. *Green,* 13 Cal.2d 37, 42 [87 P.2d 821] ; *People* v. *Roberts,* 228 Cal.App.2d 722, 729 [39 Cal.Rptr. 843].)

However, under the undisputed evidence such a deduction of fact is not reasonable. There is some evidence indicating that Larry Oliver may have dropped the heroin.[1] More significant was the futility of defendant's search. He examined the ivy three times but did not find the heroin. Yet, the police officers within two minutes found the balloon of heroin. Considering the circumstances, particularly the great difficulty encountered by defendant in his search for the narcotic contrasted with the relative ease of the officer in locating it, it is unreasonable to infer from defendant's searches of the ivy that he was the one who placed the narcotic there.

Defendant also contends that the record consisting of the settled statement is improper and inadequate for appellate review. We do not decide this question because assuming that the record is proper the evidence is insufficient to sustain the conviction. The Attorney General has no legal grounds for complaint since, at his request, we have treated the record as sufficient for review and construed the evidence most strongly in favor of the prosecution.

The judgment is reversed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[1] Mrs. Brown testified that she saw Larry Oliver shake his clothes as if he were dropping something.