THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL CRUZ RIVERA, Defendant and Appellant.

No. CR-70-151. Decided December 28, 1971.

*Ismael Cuevas Velázquez* for defendant. *Gilberto Gierbolini, Solicitor General,* and *Bienvenido Vélez Coello, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant was accused and convicted for violation of the Narcotics Act of Puerto Rico. He was charged that on February 22, 1969, he had in his possession and control, concealed, and transported, the narcotic drug known as heroin.

The evidence for the prosecution showed that policeman Manuel Izquierdo was with another agent on a special patrol when he received a radio call where he was informed that a tip had been received to the effect that "there was a 1960 model Chevrolet at Dorado Street in Puerto Nuevo, facing a small public square, with three individuals inside who were injecting themselves." They went to the aforesaid place, where they found an automobile which corresponded to the description made to them, with three persons inside. Defendant-appellant was sitting at the driver's seat, Iluminado Flores was at his right in the front seat, and Luis Martínez was in the back seat. The police vehicle stopped behind defendant's vehicle. When they noticed the presence of the policemen, Iluminado threw out a plastic cup which contained certain liquid and he tried to break a dropper which had a needle attached to it and a rubber head on its back. Policeman Izquierdo approached on the right-hand side and his companion on the left side, observing when they reached the window that on the front seat, between the defendant and Iluminado, there was a small Manila envelope and another folded paper bag on the seat. They proceeded to seize that material and to detain the occupants of the vehicle. Inside the envelope there were thirty-five wrappers which were taken to the police chemist, who determined and informed that the contents of the envelopes were positive of heroin. As a result the case was taken before a magistrate.

The first error assigned is that the court erred in admitting the evidence seized, it having been the result of an unlawful search.

■ We do not agree. The search was reasonable, incidental, and contemporaneous with a legal arrest. The right to a contemporaneous search and to the seizure of evidence not only covers the person who is being legally arrested, but also extends to the premises and things which are under his immediate control. *People* v. *Riscard*, 95 P.R.R. 394 (1967) and cases cited therein.

The search was reasonable since it was carried out by policeman Izquierdo at the moment of the arrest, when he noticed, between the defendant and his companion on the front seat of the automobile where both were sitting, an envelope and a bag, in which envelope there were some wrappers with heroin powder.

■ The arrest carried out is lawful pursuant to the provisions of Rule 11 of the Rules of Criminal Procedure. The suspicious conduct of the group consisting in that one of the occupants threw away a plastic cup which contained a liquid, and his intent to break a dropper to which a hypodermic needle was attached, together with the tip received by the police, was sufficient to create in the mind of a reasonable person the conviction that an offense is being committed in his presence. See, *People* v. *Flores Valentín*, 88 P.R.R. 895 (1963); *People* v. *Erausquín Martínez*, 96 P.R.R. 1 (1968).

■ Insofar as the tip is concerned, the reliability of the same was strengthened by the observations of the policemen in regard to the accuracy of the description given by the informer of the automobile and of the place where it was, as well as of the acts which were being committed. That the information produced by the tip is hearsay evidence does not destroy its validity to establish reasonable grounds for an arrest. We have already adopted in this jurisdiction the prin-

ciple that the information from a reliable informer, corroborated by the agent's observations as to the accuracy of the informer's description of the accused and of his presence at a particular place, is sufficient to establish reasonable grounds for an arrest without warrant. *People* v. *Flores Valentín, supra; Ker* v. *California,* 374 U.S. 23 (1963); *Draper* v. *United States,* 358 U.S. 307 (1959).

That the trial court erred in admitting in evidence the material seized upon taking judicial notice of the record of a previous trial against a codefendant for the same facts and in which the same evidence had been admitted is assigned as part of the first error. We have no grounds to believe that the judge took judicial notice of said record. The court admitted in evidence the material seized through the evidence presented at the trial.

In the second and third errors the sufficiency of the evidence presented by the prosecuting attorney is questioned. The fact essentially questioned is whether the defendant had the drug in his possession.

The evidence presented, believed as it was by the trial court, is sufficient to support the conviction. The heroin was on the seat of defendant's automobile between the defendant and his companion in a visible place. Although it is true that there is no evidence to show that the defendant had the physical possession of the drug, he and his companion had the control of the same.

 It is not necessary to have the physical possession in order to be guilty of the offenses penalized by the Narcotics Act. The possession may be actual or constructive. Defendant has the constructive possession when he maintains control or a right to control the contraband. *People* v. *Cruz Rosado,* 97 P.R.R. 500 (1969). As we stated in the *Cruz Rosado* case, citing that of *People* v. *Showers,* 440 P.2d 939 (1968):

"Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contra-

band, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic. (People v. Groom, 60 Cal.2d 694, 696, 36 Cal. Rptr. 327, 329, 388 P.2d 359, 361.)"

The case of *People* v. *Maysonet Laureano*, 90 P.R.R. 485 (1964), is clearly distinguishable from the case at bar. There the drug was found in the front drawer of an automobile belonging to a person who was not the defendant, while the defendant was in the back seat of said automobile. The only evidence which connected the defendant in that case was the throwing onto the street a magazine cover at the moment he noticed the presence of the policemen. The chemical analysis which the cover was submitted to was negative as to the presence of any drug.

In the case at bar, on the contrary, the heroin was on the seat of defendant's automobile, next to him, and in a visible and accessible place to the defendant. In addition to that, a dropper with a hypodermic needle attached to it was also thrown from said vehicle. The general set of facts and the circumstances present in the instant case clearly show that the heroin was under the control of the defendant and that he knew of the presence of the same.

■ The fact that the chemist retained by the prosecuting attorney did not state whether the evidence seized and analyzed could be used as a narcotic is assigned as part of the second error. The chemist testified that 114 grams of powder containing 26% of heroin was found. That is sufficient to conclude that there was an amount sufficient to be used as a narcotic. For such reason our decision in *People* v. *Márquez Estrada*, 93 P.R.R. 790 (1966), is not applicable.[1] See, also,

---

[1] In the case of *People* v. *Márquez Estrada, supra* at p. 792, footnote 1, we pointed out that the State of New York has obviated that question by establishing through legislation a minimum amount of narcotic which should be possessed in order to be guilty of the offense of possession of narcotics. Then we cited a provision of the Penal Law of the State of New

*People* v. *Encarnación Encarnación*, 95 P.R.R. 910 (1968).
The judgment appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández took no part in the decision of this case.

No. O-71-119.· Decided January 14, 1972.

York, which provided that any person who had under his control a preparation of one-eighth ounce or more, containing one per centum or more of heroin, morphine, or cocaine, committed the offense prescribed.

The cited provision which was part of the Penal Code of New York has been amended. At the present time said Code divides the offense of possession of narcotics into four degrees, according to the amount and type of the drug possessed. Likewise, the requirement of 1% of heroin of the total of the compound seized required by the former section has been eliminated. See, 39 McKinney's Consolidated Laws of New York Annotated, § 220 *et seq.*

Actually, § 220.15 of the aforecited Act establishes insofar as pertinent that the offense of possession of narcotics in the second degree is committed when one-eighth ounce or more of any preparation or mixture containing heroin, morphine, or cocaine, is possessed, irrespective of the percent of said narcotics found in the preparation or mixture seized. See McKinney's, *supra*, § 220.15.

Likewise, § 220.20 establishes that the offense of possession of narcotics in the first degree is committed when one ounce or more of any preparation or mixture containing heroin, morphine, or cocaine is possessed, irrespective also of the percent of the drug found in the preparation seized. See McKinney's, *supra*, § 220.20.

As it can be seen, the amount seized in the case at bar (approximately 3.9 ounces containing 26% of heroin) is several times higher than the minimum amount required by the Act of New York in order to constitute the offense of possession of narcotics in the first degree.

The foregoing does not mean that the minimum amounts required by

---

the statute of New York are conclusive to establish whether the amount seized may be used as a narcotic. However, said minimum amounts may be used as a basis for comparison.