[Nos. F002537, F002538. Fifth Dist. July 25, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
BURNELL LOUIS, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Parts II, III and IV of this opinion are not published because they do not meet the
standards for publication contained in California Rules of Court, rules 976(b) and 976.1.

**COUNSEL**

Frank Offen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Shirley A. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—In 5 Crim. No. F002537 Burnell Louis appeals from a judgment on a jury verdict finding him guilty of burglary (Pen. Code, § 459). At the time of appellant's conviction, he was on probation as a result of his plea of guilty to a charge of possession of a deadly weapon in the county jail. (Pen. Code, § 4574, subd. (a).) After his conviction of the current charge of burglary in F002537, he admitted violation of the terms of his probation in F002538. At a joint sentencing in both cases he was sentenced to four years on the burglary and two years on the violation of probation, the latter to run concurrently with the former sentence.

On this appeal, he raises three alleged instructional errors in No. F002537 and argues that the court abused its discretion in not instituting proceedings for commitment to California Rehabilitation Center pursuant to Welfare and Institutions Code section 3051 in both F002537 and F002538.

### FACTS

On the evening of December 31, 1982, Joanne Alan and her boyfriend, Michael Sinkfield, left their apartment to go to a New Year's Eve party. When they departed, the doors and windows to the apartment were locked.

They returned to the apartment between 3:30 a.m. and 4:30 a.m. the next morning. While Michael parked the car, Joanne got out and walked toward the back entrance of the residence. Prior to reaching the back door, she observed appellant looking out from her son's bedroom window. She could tell it was appellant because he was lighted by the back porch light and he had lived in the same apartment complex for several years.

Joanne pretended she did not see appellant and went back to tell Michael that there was someone in the house. Michael ran to the side of the house and hollered something to the effect of "I know you are in there." As he approached the house, Michael noticed that a side window was open and that their stereo and speakers were outside of the house by the window. Joanne then yelled to Michael that appellant was coming out the back window. Michael began to chase appellant. At this point, Michael also recog-

nized the intruder as appellant, so he yelled at appellant "I know that's you Vardell [*sic*]."[1]

After failing to catch appellant, Michael returned to the apartment. He told Joanne he was going out to call the police and that she should stay in the house with the doors locked. Further, Michael told Joanne not to touch anything. When Michael left, the stereo and speakers were still sitting outside the house. While Michael was gone, Joanne first noticed that the stereo and speakers were outside the house. She also noticed that the television set had been moved from her bedroom into the kitchen and that the kitchen window was broken. She heard some noises and looked outside. She noticed the stereo and speakers were now gone.

On Michael's return, Joanne informed him that the stereo and speakers had been taken from the side of the house. Michael immediately ran to appellant's apartment. Arriving at appellant's apartment, Michael observed appellant trying to open the front door and the stereo and speakers sitting in the bushes in front of appellant's apartment. Michael picked up the stereo and speakers and returned to his apartment.

Appellant followed Michael back to his apartment. Appellant was saying, "You know, I take you out," something to the effect that Michael did not know who he was messing with, and that appellant belonged to a gang. Appellant followed Michael into the apartment. Appellant denied breaking into the apartment.

While appellant was still in Joanne and Michael's apartment the police arrived. Within earshot of appellant, Michael yelled to the policewoman that the suspect was still in the apartment. Appellant "took off running" and was not apprehended until several days later.

### DEFENSE

Appellant denied burglarizing Joanne and Michael's apartment. He testified that he had attended various neighborhood parties that evening, but was unsure as to the time he returned. Appellant testified that on returning from the parties he went to his girlfriend's (Darlene Manning's) apartment, next to his. When Michael observed him attempting to get into his apartment, appellant claimed he was trying to get something to keep himself from becoming sick after drinking too much. Only after Michael picked up the stereo and speakers from the bushes did appellant notice that they were there. He followed Michael back to Michael and Joanne's apartment, de-

[1]Evidence established that appellant is called "Bardell."

nying his part in any burglary only because Michael had accused him of such. Appellant denied threatening Michael. Appellant admitted leaving Joanne and Michael's apartment when the police arrived and returning to Darlene Manning's.

Floyd Manning, whom appellant had been with that evening, testified that appellant returned home or to Darlene's apartment between 3 and 3:30 a.m. Darlene Manning testified that she returned home at approximately 3:30 a.m. and saw appellant walking towards her residence. Darlene and appellant entered the residence and went upstairs to bed. Darlene immediately fell asleep.

Upon arrest, after being advised of his constitutional rights, appellant told Officer Jim Conrad that he had been at a New Year's Eve party all evening with his girlfriend, Darlene Manning, at her house.

Discussion

Part I

*CALJIC Instruction No. 2.03*

The trial court instructed the jury pursuant to CALJIC No. 2.03 as follows: "If you find that before this trial the defendant made false or deliberately misleading statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstances tending to prove a consciousness of guilt, but it is not sufficient of itself to prove guilt.

"The weight to be given to such a circumstance and its significance, if any, are matters for your determination."

Appellant contends that the instruction was unwarranted by the evidence at trial and that the instruction is erroneous because it does not qualify the word "false" with the adjective "wilfully."

■ False statements regarding incriminating circumstances made by a defendant prior to trial are admissible because they may support an inference of consciousness of guilt. (*People* v. *Showers* (1968) 68 Cal.2d 639 [68 Cal.Rptr. 459, 440 P.2d 939].) Thus, the giving of CALJIC No. 2.03 is justified when there is evidence that a defendant fabricated a story to explain his conduct. The instruction is not applicable when a defendant's trial testimony is consistent with his pretrial statements to police and is merely inconsistent with the prosecution's case. (*People* v. *Green* (1980)

27 Cal.3d 1, 40-41 [164 Cal.Rptr. 1, 609 P.2d 468]; *People v. Rubio* (1977) 71 Cal.App.3d 757, 769 [139 Cal.Rptr. 750], disapproved on another ground in *People v. Freeman* (1978) 22 Cal.3d 434, 438 [149 Cal.Rptr. 396, 584 P.2d 533].)

In the present case, appellant's pretrial statement was inconsistent with his own trial testimony as well as the testimony of other defense witnesses.

After his arrest, appellant waived his constitutional rights and spoke about the incident with Officer Jim Conrad. Appellant told Conrad that he had been partying at Darlene Manning's house on the night of the incident. He further told Conrad that he left a couple of times during the evening to buy some beer and denied having been inside the victim's apartment that evening.

At trial, appellant testified that he had been partying at various places in the apartment complex during the evening, from approximately 10:30 p.m. until sometime the next morning. He had been at Darlene's before leaving for the parties but she did not accompany him. Rather, he went with Floyd Manning. After the parties, appellant testified that he returned to Darlene's.

Darlene Manning testified that on New Year's Eve she went with some girlfriends to the Tuolumne Lounge. Appellant did not accompany her because she wanted to have fun with her friends on New Year's Eve. She did not see appellant from approximately 11:30 p.m. until 3:30 a.m. the next morning.

Because the inconsistency is with his own testimony and not only with that of a chief witness on the crucial defense of alibi, the court was justified in giving a proper instruction on consciousness of guilt as the result of a wilfully false statement.

■ It is true that the instruction should only be given when the statement is found to be deliberately false. (*People v. Amador* (1970) 8 Cal.App.3d 788, 792 [87 Cal.Rptr. 662]; see conc. opn. of Justice Traynor in *People v. Albertson* (1944) 23 Cal.2d 550, 581-582 [145 P.2d 7].)

A statement can be false without being made wilfully or deliberately. CALJIC No. 2.03 would be more accurate if it included the word "wilfully" between the words "made" and "false" on line two.[2]

---

[2]Defense counsel preserved the objection.

"Ms. CRADDOCK: I would also at this time object to the use of Caljic instruction 2.03, consciousness of guilt—falsehood.

"There is no showing in any of the evidence that there was a willful and deliberately misleading statement on the part of Mr. Louis. . . ."

However, though it was error not to have used the word "wilfully," we have concluded that the error was nonprejudicial. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

First, it is to be noted that the instruction uses the words "deliberately misleading statements," which partially soften the effect of omitting the word "wilfully."

Appellant was identified by Joanne and Michael as the man inside their residence. Both Joanne and Michael had lived near appellant and had been acquainted with him for some time and were positive in their identification of him as the intruder. Michael had been a security guard at the apartment complex and had played football with appellant. He was thoroughly familiar with his appearance, stature and walk. Michael found appellant attempting to get into his own apartment. The stereo and speakers were in the bushes near the door. Only a few moments had transpired since the stereo and speakers were at Michael's residence. We have no doubt that a result more favorable to appellant would not have occurred had CALJIC No. 2.03 not been given.

### Part II*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgments are affirmed.

Woolpert, J., and Martin, J., concurred.

---

*See footnote, *ante,* page 156.