Filed 7/29/14  P. v. Medeiros CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>GAYLE MARIE MEDEIROS,<br><br>     Defendant and Appellant. | F066731<br><br>(Super. Ct. No. CRF39730)<br><br>**OPINION** |

-ooOoo-

## THE COURT\*

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*     Before Levy, Acting P.J., Cornell, J. and Kane, J.

A jury convicted appellant, Gayle Marie Medeiros, of first degree burglary (Pen. Code, §§ 459, 460, subd. (a);[1] count 1) and bringing a controlled substance into a jail (§ 4573; count 3), and in a separate proceeding appellant admitted allegations she had suffered a prior felony conviction that qualified as both a prior serious felony conviction within the meaning of section 667, subdivision (a) and as a "strike."[2] The court imposed a prison term of 11 years consisting of the following: on count 1, the two-year lower term, doubled pursuant to the three strikes law (§§ 667, subd. (e)(1); 1170.12, subd. (c)(1)) for a total of four years; one year on count 3, doubled pursuant to the three strikes law, for a total of two years; and five years on the prior serious felony enhancement.

On appeal, appellant contends (1) the evidence was insufficient to support her burglary conviction, and (2) the sentence must be vacated and the matter remanded for resentencing because the court misunderstood the scope of its sentencing discretion. We affirm.

## FACTS

### I. Prosecution Case

Melody Jo Timmons testified that at approximately 5:00 p.m. on October 20, 2012 (October 20), she was outside the Tuolumne Market in Tuolumne waiting for her niece, Andrea, to arrive and give her a ride, when she saw appellant, who she had known for approximately 10 to 12 years, "maybe longer," walking through the store parking lot.[3] Appellant "caught [Timmons] and pulled [her] aside," and the two spoke for "several

---

[1]     All statutory references are to the Penal Code.

[2]     We use the terms "strike," in its noun form, and "strike conviction" as synonyms for "prior felony conviction" within the meaning of the "three strikes" law (§§ 667, subds. (b)-(i); 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

[3]     Except as otherwise indicated, the "Prosecution Case" portion of our factual summary is taken from Timmons's testimony.

2

minutes," during which time appellant showed Timmons some photographs on her (appellant's) cell phone of Andrea and two of Timmons's sons.

At some point, Timmons began walking the approximately one to one-and-one-half-mile distance to her house, and while she was walking, "tribal security" picked her up and drove her to her brother's residence. Thereafter, Andrea arrived and drove Timmons home. Upon her arrival, she saw that the front door was "slightly wedged open" and the "trimming on the inside" of the door was "broke[n] and chipped." She went inside and discovered that some of her property was missing, viz., a mirror, a piece of furniture with "three compartment-like little shelves,"[4] and boxes containing clothes.

At about the time Timmons noticed her door was open, Andrea was in the process of backing her vehicle out of the driveway, at which point appellant arrived in a truck, along with another person, and blocked Andrea from leaving. Soon thereafter, appellant "came running up to [Timmons's] house" and onto the porch. Timmons told her "get off [the] porch," and appellant yelled something like "'I know you got my phone,'" and demanded that Timmons return it. Appellant also "swore up and down that she was going to go in [the] house and get her phone." She asked Timmons, "'Where is your purse?'" and "acted like she was going to … use … physical force." Timmons ordered appellant to leave. At some point thereafter, Timmons called the Tuolumne County Sheriff's Department and "turned [appellant] in for … accusing [Timmons] of stealing [appellant's] phone."

Tuolumne County Deputy Sheriff Jeff Gempler testified to the following: After being dispatched at 9:38 p.m., on October 20, he made contact with appellant, who, along with Mike Flynn, was sitting in a pickup truck parked approximately 30 yards from Timmons's house. Appellant was sitting in the passenger seat. She told the deputy that she had been "hanging out" with Timmons earlier that day at Tuolumne Market. At one

---

**4** This item is generally referred to throughout the testimony as the "tote." We will refer to it by that name.

point, appellant left her cell phone near Timmons and went to use the bathroom. When she returned, Timmons and the phone were gone.

Shortly after speaking with appellant, Gempler spoke with Timmons. Timmons told the deputy that she came home from the store to find her front door, which had been closed when she left the house, "wide open." She soon thereafter discovered that missing from her house were the tote, "a box … or boxes of clothing," and a "white tote."[5]

While he was speaking with appellant, Gempler looked into the bed of the truck and saw a saddle, one or two boxes of clothing, and the tote. After speaking with Timmons, and thinking that he had just seen a tote like the one she described in the bed of the truck, he brought Timmons over to the truck and showed her the tote. Upon seeing it, Timmons stated, "'That's mine.'" Timmons also said the boxes of clothing in the truck did not belong to her.

There was a bottle of ketchup inside the tote that was not visible before Gempler removed the tote from the truck. Before Gempler pulled the tote out of the truck bed, Timmons "indicate[d], 'There is a bottle of ketchup in there[.]'"

With Timmons's permission, Gempler searched her house for appellant's cell phone. He did not find it.

Timmons testified she did not put the tote in the truck and she did not give appellant or anyone else permission to take property from her house. When asked if any of her friends or relatives put the tote in the truck, Timmons responded, "Not that I -- I don't know. No. But it could possibly be."

## II. Defense Case

Appellant, the sole defense witness, testified to the following: On October 20, she was living in Tuolumne but was in the process of moving to Amador County. She had

---

**5** The "white tote" is a different item than the three-drawer piece we refer to as the tote.

packed her belongings and had arranged for Mike Flynn to come to Tuolumne to pick her up.

Prior to Flynn's arrival, appellant went to Tuolumne Market, and as she was coming out of the store she encountered Timmons, her former sister-in-law, who she had known for approximately 30 years. Appellant had pictures of Timmons's children on her cell phone, and as the two sat on the ground in a breezeway by the store, appellant showed the pictures to Timmons. Eventually, Timmons said she had to leave, and appellant, who had laid her phone on the ground, said goodbye and went to use a public bathroom, at which point she realized she did not have her phone. Appellant thought to herself, "'[Timmons] has my phone,'" and went back to where she and Timmons had been sitting. Timmons, however, was gone and appellant could not find her phone. At that point it was approximately 7:55 p.m.

Appellant walked to the Tuolumne Apartments, located "right next to the store," where an acquaintance lived, and waited in that person's apartment for Flynn to arrive. Danielle Hawn, who was in the process of moving into that apartment, was also there. Flynn arrived at approximately 8:35 p.m., and after they "sat and … socialized," Flynn and appellant "took [Hawn] up Tuolumne Road to pick up [her] belongings," which she had "stashed on the side of the road." After that was accomplished, Flynn and appellant "dropped [Hawn] off," and Flynn then drove appellant to her home, where she "got [her] … clothes and stuff." Appellant "kind of lifted up" her belongings to Flynn, who put the items in the truck bed. Appellant never climbed up into the truck bed. When they were finished, at approximately 10:00 p.m., Flynn, at appellant's request, drove appellant to Timmons's house so appellant could retrieve her phone.

When they arrived, appellant approached Andrea, who was in her car outside the house, and asked her to help get appellant's phone back from Timmons. Andrea rolled up her window and tried to back up, but the pickup was in her way.

5

Timmons came out on the porch, and appellant walked toward her. Appellant "might have" gone up on the porch. Appellant said she needed her phone, but Timmons denied having it. Timmons was "combative," and appellant "got scared." Andrea had called tribal security and appellant went back to the truck to wait for them because she thought they would help her recover her phone.

At that point, Flynn began to back up the truck to let Andrea leave, and Timmons "came down" and began banging on the truck, telling appellant and Flynn to leave. She then climbed into the bed of the truck, where she was "screaming" and "banging stuff around." Flynn "turned [the truck] around" and began driving away from the house, in an effort to "get [Timmons] out of the back of truck," at which point Timmons "got out of the truck." Flynn then parked the truck and shortly thereafter tribal security arrived, followed a short time later by Deputy Gempler. At that point, Timmons was "screaming" that the tote was in the truck.

Appellant was not in Timmons's house on October 20, and had not been "in that house in months." She did not steal the tote.

## DISCUSSION

### I. Sufficiency of the Evidence – Burglary

Appellant argues the evidence was insufficient to support her conviction of first degree burglary. (See *People v. Sample* (2011) 200 Cal.App.4th 1253, 1261 [elements of first degree burglary are: "(1) entry into a structure currently being used for dwelling purposes and (2) with the intent to commit a theft or a felony"].)

A. Standard of Review

"The court must 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.) "'Circumstantial evidence may be sufficient to connect a

6

defendant with the crime and to prove his guilt beyond a reasonable doubt.'" (*People v. Bean* (1988) 46 Cal.3d 919, 933.) "'"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."'" (*People v. Kraft* (2000) 23 Cal.4th 978, 1054.) "Reversal on this ground [i.e., insufficiency of the evidence] is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the adjudication].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "'"'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment.'"'" (*People v. Cantrell* (1992) 7 Cal.App.4th 523, 538.) However, "'[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; inferences that are the result of mere speculation or conjecture cannot support a finding [citations].'" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-1394, italics omitted.)

B. Analysis

The People, in arguing that appellant's burglary conviction should be upheld, rely on the following principle: "Possession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*People v. McFarland* (1962) 58 Cal.2d 748, 754 (*McFarland*).) The People argue the tote was stolen from Timmons, appellant possessed the tote soon after it was stolen, and the necessary corroboration is supplied by other evidence, including that of statements appellant made to Deputy Gempler. Appellant counters that (1) the evidence was insufficient to establish she possessed the tote, and that, in the alternative, (2) if it is found she possessed the tote, the evidence was insufficient to establish the required corroboration. We address appellant's claims in that order.

7

### 1. *Possession of Recently Stolen Property*

"Possession may be actual or constructive. Actual possession means the object is in the defendant's immediate possession or control. A defendant has actual possession when he himself has the [object]. Constructive possession means the object is not in the defendant's physical possession, but the defendant knowingly exercises control or the right to control the object." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 831.)

Constructive possession may be found "[w]hen contraband is found in a place to which a defendant and others have access and over which none has exclusive control." (*People v. Hutchinson* (1969) 71 Cal.2d 342, 345 (*Hutchinson*).) However, when contraband is found in such a place, "'no sharp line can be drawn to distinguish the congeries of facts which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of [contraband]....'" (*Id*. at p. 345.) "'[P]roof of opportunity of access to a place where [contraband is] found, without more, will not support a finding of possession.'" (*Id*. at p. 346.)

Appellant argues that the evidence was sufficient to establish only that she had access to the truck bed where the stolen tote was found, but not that she knowingly exercised control or the right to control the tote. We disagree.

We find instructive *Hutchinson*, *supra*, 71 Cal.2d 342. In that case, the mother of the 18-year-old defendant discovered marijuana in a closet and under a bed in a bedroom that the defendant shared with two brothers and a step-brother. Two of these boys were "away on vacation" (*id*. at p. 344) in the week preceding the discovery of the contraband, but the night before the discovery "friends of defendant and his brothers and sisters had visited the … house for a swimming party" and "[t]he boys who attended such swimming parties dressed and undressed in the … bedroom [where the marijuana was found]" (*id.* at p. 345). Our Supreme Court stated that if the evidence had shown only that the marijuana was hidden where it was found in the shared room, a finding of unlawful possession would not be supported. (*Id*. at pp. 345-346.) However, the fact that the defendant fled

8

through his bedroom window when his mother threatened to call the police was sufficient additional evidence from which to draw an inference of consciousness of guilt, thereby justifying the giving of a jury instruction on the significance of flight. (*Id*. at p. 346.) The court stated: "The jury was not required to accept defendant's explanation that his flight was motivated only by a wish to escape from his mother's emotional outburst. The jury could reasonably infer that his flight reflected consciousness of guilt and that he therefore knowingly possessed the marijuana found in the bedroom and closet." (*Ibid*.)

Thus, in *Hutchinson,* the evidence was sufficient to establish possession where (1) the contraband was located in a place to which persons in addition to the defendant had access, and (2) there was conduct by the defendant indicating consciousness of guilt. Here too, as indicated above, the parties do not dispute that the evidence was sufficient to establish that the tote was stolen from Timmons and that appellant had shared access to the place where the tote was found, viz., the bed of the truck in which appellant was riding. The question that remains then is whether appellant engaged in conduct indicating consciousness of guilt. The People contend this element is established by statements appellant made to Deputy Gempler. To address this claim, we must first summarize the evidence of the relevant statements.

Appellant testified that "at first," when Gempler told her the tote was in the truck, she "thought it was from when [she and Flynn] gave [Hawn] a ride up to the burned-out trailer up the road, to get her belongings on the side of the road." Hawn had "loaded [the truck] up" with her belongings, appellant did not help her, and "[Hawn] must have placed [the] tote back there then." Appellant, "thought maybe [Hawn] had forgotten to take it out of the truck." And as indicated earlier, when she and Flynn were loading her belongings into the back of the truck, appellant did not go in the back of the truck. When appellant learned the tote belonged to Timmons, "the only thing [appellant could] think of" was that Timmons put it there when she climbed into the back of the truck.

On cross-examination, the following exchange occurred:

9

"Q.     Your first story to Deputy Gempler was you obtained the tote from a female you met earlier at Tuolumne Market; is that right?

"A.     That is what I believed, uh-huh.

"Q.     … And then your next statement was that you picked it up in the area of North Tuolumne near a burned-up trailer?

[¶] …  [¶] …

"A.     Yes.  I told --

"Q.     That was your next story?

"A.     That was the same story."

On rebuttal, Gempler testified he told appellant the tote belonged to Timmons and then asked appellant how she "c[a]me across" the tote.  In response, "the first thing [appellant] said" was that "[s]he had gotten it from a gal at the Tuolumne Apartments." There followed this exchange:

"Q.     … And then did she change that a little bit, or at all?

"A.     Yes.

"Q.     Then what did she say?

"A.      She and a female had been up at … a burned-up trailer on North Tuolumne Road, and that is where the tote was located."

Appellant argues that her statements amount to no more than speculation as to how the tote got into the back of the truck and therefore do not demonstrate consciousness of guilt.  She argues that "the only reasonable inference" from the evidence is she did not know the tote was in the truck, and that her statements regarding Danielle Hawn's property were "efforts to make sense of the situation, not calculated statements showing consciousness of guilt."  We disagree.

We recognize that no witness contradicted appellant's testimony that she rode in a pickup truck with a person named Danielle Hawn to a location in Tuolumne where Hawn retrieved personal property she (Hawn) had cached by the side of the road, and that Hawn

10

had, unbeknownst to appellant, put this property in the back of the truck, where Timmons's tote was later found. However, although according to appellant's account, other persons were present when appellant met Hawn in an apartment near the store and that Flynn was with her when she later rode with Hawn in the truck to the spot where Hawn retrieved her property, no witness corroborated appellant's account or, indeed, the fact of Hawn's existence. Given this factor, and appellant's obvious motive for making up such a story, the jury reasonably could conclude that appellant's account of going with Hawn to get her property, and, indeed, Hawn's very existence were both fictitious, and that appellant told this story to deflect suspicion from herself. And the jury could have further concluded that such a false account, like the act of flight in *Hutchinson*, demonstrated consciousness of guilt. Such a false statement, coupled with evidence of appellant's access to the place where the tote was found and the evidence the tote belonged to Timmons and that she gave no one permission to take it, was sufficient to establish that appellant knowingly possessed recently stolen property. (See *People v. Kimble* (1988) 44 Cal.3d 480, 496 ["'False statements deliberately made by defendants to arresting officers concerning matters within [defendant's] own knowledge, and relating to the issue of guilt or innocence, "cogently evidence consciousness of guilt and suggest that there is no honest explanation for incriminating circumstances"'"]; *People v. Showers* (1968) 68 Cal.2d 639, 643 ["False statements regarding incriminating circumstances constitute evidence which may support an inference of consciousness of guilt"]; *People v. White* (1995) 35 Cal.App.4th 758, 772 ["[t]he inference of guilt comes from the fact that a falsehood was told in order to mislead the authorities and avoid suspicion"].)

   2. *Additional Corroborating Evidence of Guilt*

  As indicated above, given the evidence of appellant's knowing possession of the recently stolen tote, only "slight corroboration" is required to establish that the evidence was sufficient to support appellant's burglary conviction. (*McFarland*, *supra*, 58 Cal.2d at p. 754.) In the instant case, the necessary corroboration is provided in at least two

11

ways. First, as demonstrated above, the jury reasonably could have found that appellant made false statements, indicating consciousness of guilt. (*Id*. at p. 755 ["Where recently stolen property is found in the conscious possession of a defendant who, upon being questioned by the police, gives a false explanation regarding his possession …, an inference of guilt is permissible"].) Second, the evidence that appellant was upset with Timmons because she (appellant) believed Timmons had stolen her phone, gives rise to an inference that appellant had a motive to steal appellant's property.

### 3. *Other Evidence*

Appellant also argues that the following points militate in favor of her innocence: There was no eyewitness testimony that appellant entered Timmons's house; there was no physical evidence, such as fingerprints, that she had been in the house; and if she had burglarized Timmons's house, she asserts, she would not have later returned to the scene of the crime, in a truck carrying property she had stolen, and she would not have lingered at the house, waiting for law enforcement to arrive. These factors, appellant argues, support her claim that the evidence was sufficient to establish, at most, only "a 'strong suspicion' of guilt." We disagree.

The factors cited by appellant do no more than create conflicting inferences regarding appellant's guilt, and, as indicated earlier, such conflicts must be resolved in favor of the judgment. The jury reasonably could have concluded that Timmons's house was broken into; items of personal property, including the tote, were taken without Timmons's permission; and the tote was later found in the back of a pickup in which appellant was riding. Moreover, the jury was not compelled to credit either appellant's uncorroborated explanation to the investigating officer as to how the tote came to be in the truck, or her testimony that Timmons must have put it there. Thus, the jury could have concluded that appellant was in knowing possession of property stolen in a recent burglary, and that she made up a story to account for that possession. On this record, substantial evidence supports appellant's conviction of first degree burglary.

12

***II. Trial Court's Understanding of the Scope of its Sentencing Discretion***

Trial courts have the discretion under section 1385, subdivision (a) to strike strike convictions. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.) In addition, "[A] trial court in a Three Strikes case may exercise its discretion under section 1385, subdivision (a), so as to dismiss a prior conviction allegation with respect to one count, but not with respect to another." (*People v. Garcia* (1999) 20 Cal.4th 490, 503-504 (*Garcia*).) Appellant contends the court was not aware that it could strike appellant's strike conviction with respect to count 3 only, and therefore the sentence must be vacated and the matter remanded for resentencing to allow the court to consider whether to do so. We disagree.

A. <u>Factual Background</u>

Deputy Gempler testified that "at some point" he arrested appellant and took her to the Tuolumne County Jail (jail). Deputy Andrea Eriksen testified that she was the sergeant of the day at the jail on October 20, when Gempler brought appellant to the jail. Eriksen had appellant step into a holding cell, and when Eriksen "had [appellant] change out [of] her shirt," Eriksen discovered a plastic baggie underneath appellant's left breast, containing what appeared to be marijuana. The parties stipulated that the substance in the baggie was in fact marijuana and that appellant "knew of the substance's nature or character as a controlled substance."

B. <u>Procedural Background</u>

As indicated earlier, appellant admitted strike allegations as to both counts 1 and 3. At the outset of the sentencing hearing, defense counsel asked the court to "strike the strike and give [appellant] probation." The court stated, "I am not going to strike the strike," and "state prison is an appropriate sentence." Thereafter, the court purported to impose a four-year term on count 1 and a concurrent two-year term on count 3.

The prosecutor responded, "Can't do that, Your Honor," i.e., impose a concurrent term on count 3, because count 1 and count 3 were "totally independent of each other,"

and therefore the three strikes law required that the court impose consecutive sentences on those counts. (See *People v. Lawrence* (2000) 24 Cal.4th 219, 222-223 [where defendant is convicted of a felony and has suffered a strike, consecutive sentences are mandated for any current felony convictions "not committed on the same occasion, and not arising from the same set of operative facts" within the meaning of section 667, subdivision (c)(6) (section 667(c)(6))].)

After hearing argument on the issue, the court stated: "I think you're right, Mr. Hansen [prosecutor], unfortunately. [¶] It was my intention to … make [the term on count 3] run concurrent, but I'm compelled by the statute to run it consecutively." At that point the court imposed sentence which, as indicated earlier, consisted in part of consecutive terms on counts 1 and 3.

C. Analysis

When the record affirmatively shows that a sentencing court mistakenly believed it was required to impose consecutive terms and had no discretion to impose concurrent terms, remand is necessary so the court may "impose sentence with full awareness of its discretion." (*People v. Fuhrman* (1997) 16 Cal.4th 930, 944.) Appellant argues that the court expressly stated it wanted to impose concurrent, rather than consecutive sentences, *it could have done so had it struck appellant's strike conviction with respect to count 3*, and therefore the record affirmatively shows that the court was unaware that it could, in the exercise of its direction, strike appellant's strike as to count 3 only. We disagree.

As indicated above, the major premise of appellant's claim, set forth in italics above, is that striking appellant's strike as to count 3 only would have allowed the court to impose concurrent sentences. We assume without deciding that if this premise were true, the court's failure to impose concurrent sentences, coupled with the court's expressed intention to do so, would constitute an affirmative showing that the court did not understand the scope of its sentencing discretion. Appellant's major premise, however, is false.

14

Section 667(c)(6) provides, in relevant part, that where, as here, "a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more [strikes]," the sentencing court "shall adhere to" certain enumerated principles, including the following:  "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count …."

The court found true, and did not strike, the strike as to count 1.  Moreover, as the parties do not dispute, the offenses were not committed on the same occasion and did not arise out of the same set of operative facts, within the meaning of section 667(c)(6).  Therefore, under the plain language of the statute—particularly, the directive that a sentencing court "shall adhere to" the consecutive sentencing requirement of section 667(c)(6)—the court was required to impose consecutive sentences on counts 1 and 3.  There is nothing in section 667(c)(6) to indicate that the statute's consecutive sentencing mandate would not apply to a defendant who, like appellant, stands convicted of multiple felonies and has suffered a strike, if the sentencing court chooses to strike a strike conviction as to one count only.

On this point we find instructive *Garcia*, *supra*, 20 Cal.4th 490.  There, as indicated above, our Supreme Court held a sentencing court may dismiss strike conviction allegations on a count-by-count basis.  In doing so, the court rejected the Attorney General's argument that "striking prior conviction allegations with respect to one count, but not with respect to another, undermines [the section 667(c)(6)] principle of consecutive Three Strikes sentences."  (*Garcia*, at p. 500.)  The defendant in *Garcia* had suffered multiple strikes and stood convicted of two residential burglaries, and the sentencing court struck appellant's strikes as to one—the "Gantt burglary"—but not as to the other, the "Kobel burglary."  (*Ibid*.)  Our Supreme Court explained:  "A requirement that a defendant serve the individual sentences for different current felonies consecutively does not indicate how the trial court should determine the lengths of those individual

15

sentences. Here, for example, the trial court conformed to the *consecutive sentencing requirement* by ordering that the 16-month sentence for the Gantt burglary be served consecutively to the 30-year-to-life sentence for the Kobel burglary. Therefore, we see nothing in the trial court's action that is inconsistent with the *consecutive sentencing requirement* in the Three Strikes law." (*Ibid*., italics added.) Thus, *Garcia* teaches that striking a defendant's strike(s) with respect to only one of multiple current felonies affects "the length[]" of the sentence for that count, but it does not eliminate the section 667(c)(6) "consecutive sentencing requirement" for multiple current felony convictions. (*Garcia*, at p. 500.) Therefore, as the court correctly stated, the three strikes law precluded the imposition of concurrent sentences, and for this reason the court's failure to impose concurrent sentences cannot suggest that the court failed to realize it had the discretion to strike strike allegations as to one count only. Accordingly, we conclude the record does not show the court misunderstood the scope of its sentencing discretion.

## DISPOSITION

The judgment is affirmed.