Filed 2/11/16  P. v. Jasper CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KENNETH JASPER,<br><br>        Defendant and Appellant. | A143146<br><br>(Contra Costa County<br>Super. Ct. No. 51403237) |

A jury found defendant Kenneth Jasper guilty as charged of possessing a forged driver's license (Pen. Code, § 470b), and the personal information of more than ten people with the intent to defraud (Pen. Code, § 530.5, subd. (c)(3)).  The trial court thereafter found true an enhancement allegation that defendant had a prior robbery conviction that qualified as a strike under the "Three Strikes" law (Pen. Code, §§ 667, 1170.12) and the habitual offender statute (Pen. Code, § 667.5).  Defendant was sentenced to state prison for an aggregate term of five years.  He contends the trial court committed instructional error, and the prosecutor committed misconduct in her closing argument to the jury.  Recognizing that the misconduct claim may be deemed forfeited because his trial counsel objected to only one of the alleged instances of misconduct, defendant asserts his counsel was constitutionally incompetent.  We conclude there was no instructional error, and no misconduct, and we affirm.

**BACKGROUND**

The salient circumstances are not in material dispute and are easily recounted.

Information that came to the attention of Concord law enforcement authorities caused them to obtain a warrant authorizing a lawful search of defendant's Pittsburg residence. Detectives Thoms and Sherwin were among the officers who conducted the search. Defendant was present, and told Thoms that he resided there with his girlfriend, Diana Barros, and that his children were frequent visitors. Sherwin and Thoms testified that Barros was also present, as was an individual identified as Lisa Clayworth. From his observance of personal items and the condition of the bedrooms, Sherwin concluded that "several people" were living there.

In the master bedroom, Thoms discovered "a passport belonging to somebody that was not present . . . along with a checkbook belonging to another individual that was also not present." She also found two driver's licenses, and a Fannie Mae mortgage application. The two driver's licenses had photos of Barros, but the names on the licenses were of other people  The Fannie Mae mortgage application was not in either defendant's or Barros's name, but used the name on one of the forged driver's licenses.

In a second bedroom, officers located a footstool with a storage compartment. The footstool contained numerous gift cards and credit cards, a magnetic stripe reader and encoder device, a couple of small spiral bound notebooks, a Wells Fargo consumer account application with the name "Phu Phan" on the documents, and checks. Some of the cards appeared to have been modified by manually removing the raised numbering (embossing) on the cards and re-embossing over the removed numbers. Other cards had the information contained in their magnetic stripes modified. One card had an embossed name that appeared to have been partially removed and the name "Ernesto" embossed in its place. When officers later read that card's magnetic stripe, it contained defendant's name. The notebooks contained personal identifying information for persons other than defendant or Barros.

In a room next to the kitchen, officers found the supplies necessary for making false identifications and credit cards as well as tools to alter credit cards and transform gift cards into credit cards. They also found a number of California driver's licenses— some of which were partially completed—and strips of transparent plastic which had

2

State of California seals similar to those found on California driver's licenses. Some of the California driver's licenses were real, but Sherwin confirmed that most were counterfeit. Two of the licenses, one laminated and the other in the process of being laminated, had defendant's pictures on them. One of the licenses, bearing the name "Ray Anthony Juachon," bore defendant's photograph. The black notebook found on the desk contained the names and personal information of approximately 38 individuals. Twelve of those individuals testified that defendant's possession of their personal information was not authorized by them. The information was used to open accounts, and in some instances charge goods and services.

Defendant did not testify, or present any evidence on his behalf.

## REVIEW

### The Claimed Instructional Error

The jury was instructed with CALCRIM Nos. 400 and 401, as follows:

"A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.

"A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.

"To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

"1. The perpetrator committed the crime;

"2. The defendant knew that the perpetrator intended to commit the crime;

"3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

"AND

"4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

3

"Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

"If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor.

"If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."

Defendant contends giving these instructions constituted prejudicial error "because there was no evidence that defendant aided and abetted another's possession of identity theft items." At best, defendant argues there was only evidence that he was a "co-resident" with Barros, given that the prosecution presented no evidence that he "controlled" the premises or possessed the items found therein. Thus, "while there was evidence that another individual [i.e., Barros] might have been the perpetrator, there was no evidence [defendant] aided her unlawful possession."

Defendant tries to atomize the evidence, examining each item, room by room, to try to fix who was more likely the item's owner, and thus deserving of more criminal attribution. The emphasis on ownership or control of the items is largely beside the point, because "neither ownership nor physical possession is required to establish the element of possession," plus, "[t]wo or more persons may be in joint constructive possession of a single item of personal property . . . ." (*People v. Scott* (2009) 45 Cal.4th 743, 749–750.) Even the authorities that speak of a defendant's dominion or right to control an object do not require that the dominion or right to control be exclusive: it can be joint or partial. (E.g., *People v. Rogers* (1971) 5 Cal.3d 129, 133–134; *People v. Showers* (1968) 68 Cal.2d 639, 643–644.)

In any event, as will appear, defendant appears to concede that he knew of what was going on in his home. In light of this apparent concession, the crucial issue in aiding and abetting is intent, which, like possession, is to be determined from the totality of the

circumstances.  (See, e.g., *People v. Rollo* (1977) 20 Cal.3d 109, 120; *People v. Green* (1995) 34 Cal.App.4th 165, 181; *People v. Peloquin* (1969) 270 Cal.App.2d 610, 612.) Defendant is therefore mistaken in emphasizing the absence of evidence demonstrating that he had "legal control of the property. . . . owned the property, paid the mortgage on the property, paid rent on the property, or was named on a lease for the property . . . ."; in short, that he "had a superior possessory interest that he provided to Barros."  The presence, or absence, of such indicia is not dispositive.  Because defendant's premise is wrong, so is his conclusion that "the jury could not properly infer from the evidence presented that appellant provided Barros with anything, let alone a safe place to carry out her criminal enterprise."

Defendant labels as "an incorrect legal theory" any suggestion "that because [he] knew of Barros['s] activities, this was sufficient to prove that he aided her by providing her with a safe place to conduct her activities."  And, he claims, it is likewise "improper to imply that mere knowledge of criminal activities taking place in a defendant's residence satisfies the elements of specifically intended [*sic*] to further another's wrongdoing."  These are incomplete straw man arguments.  CALCRIM No. 401 clearly told the jury that was what needed was knowledge, intent, and actual aid, facilitation, promotion, encouragement, or instigation of the charged criminality.

Defendant told Detective Thoms he "lived there with . . . Barros."  Nothing compelled the jury to view defendant as an innocent bystander who merely happened to occupy living space with Barros at the same address.  As the prosecutor argued:  "To claim that somehow the defendant doesn't know that these items are present in his home is beyond reason and is not a reasonable interpretation of the facts here before you." [¶] . . . [¶]  "[Defense] counsel is asking you to believe that the defendant is walking around his home without knowing these items are there, without, at a minimum, being involved."  Besides, the instructions allowed the jury to come to precisely that conclusion—"the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."

5

The names of defendant and Barros were intermingled with the incriminating items found during the search of defendant's home. It is no stretch to see defendant and Barros as being equally knowledgeable about what was going on inside the house, and equally involved. It was just as plausible to see defendant as aiding and abetting Barros as that she was aiding and abetting his criminal enterprise. Again, quoting the prosecutor: "[I]f I'm understanding correctly, the [defense] argument is that since some of the cards were in a female's name with a picture of Ms. Barros, then that must mean that . . . she's the one creating those documents and running this identity theft business . . . . [¶] I think our common sense tells us the person who is running the identity theft business isn't going to only make cards for himself . . . ." Flipping this logic, because defendant's name were found on some incriminating items, it would be equally justified to see him as the agent to Barros's principal.

"The court has a sua sponte duty to instruct on aiding and abetting when the prosecution relies on it as a theory of culpability. (*People v. Beeman* (1984) 35 Cal.3d 547, 560–561 . . . .)" (CALCRIM No. 401 (2015 ed.), Bench Notes, p. 158, bold type omitted.) Which the prosecution here obviously did.

And, if it was Barros whom the jury saw as the aider and abettor, that would make defendant the direct perpetrator, and the jury would, as instructed with CALCRIM No. 200, disregard the theory that defendant was an aider and abettor to Barros, and find him guilty as the direct perpetrator. There was no error.

**The Claimed Prosecutorial Misconduct**

According to defendant, "In the People's closing argument, the prosecutor argued appellant must have knowingly possessed the hand gun, forged license and notebook of names and identity information. The defense argued that there was a doubt whether appellant knew of the items found in the house because they were concealed, not out in the open, and there was evidence that Barros may have possessed them instead. In rebutting this argument, the prosecutor engaged in several distinct manners of improper argument: (1) she shifted the burden of proof by suggesting appellant needed to prove that Barros possessed the items, (2) she shifted the burden of proof by focusing on the reasonableness of

6

the People's interpretation of the evidence, (3) she misstated the law regarding the presumption of innocence, (4) she pointed to facts not in evidence to speculate why appellant's name might have appeared on the magnetic stripe of a card found in the footstool, and (5) she urged the jury to use gender-based stereotyping in evaluating the evidence to find that appellant—a male, not Barros—a female, possessed the items." Actually, defendant makes it clear he is not challenging any statements made by the prosecutor in the first part of her argument; the objectionable remarks were confined to what defendant calls the prosecutor's "rebuttal closing argument." However, defendant recognizes he faces an obstacle to the merits being reached.

" ' "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' [Citation.] 'Because we do not expect the trial court to recognize and correct all possible or arguable misconduct on its own motion [citations], defendant bears the responsibility to seek an admonition if he believes the prosecutor has overstepped the bounds of proper comment, argument, or inquiry.' [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 215.) " 'In the absence of a timely objection the claim is reviewable only if an admonition would not have otherwise cured the harm caused by the misconduct.' " (*People v. Hinton* (2006) 37 Cal.4th 839, 863.)

Defendant concedes his trial counsel "objected to only one of the instances of misconduct raised in this argument." That instance occurred immediately after the "identity theft business" quoted above, as follows:

"And if I'm understanding correctly, the comment about the card that when swiped said—would say . . . Kenneth Jasper was presented to you as a reason that maybe then that's not—that he's not the one involved in this identity theft, maybe I misunderstood that, but I want to make sure it's clear. If an individual goes to a store and wants to make a return or get a refund back on a card, maybe there's some reason that they think they're going to get a refund for something. They need a way to get that

7

money, that cashier is not going to hand them cash. So they need a card that will swipe to their own personal account.

"MR. HSIEH: Objection. Assumes facts not in evidence.

"THE COURT: Overruled.

"MS. TOMPKINS [the prosecutor]: So the fact that there's a card that would read to Kenneth Jasper is still completely consistent with him being involved in this identity theft and in no way would negate his involvement. It's yet another tie to him in yet another room that shows that he is in fact involved."

" 'Prosecutors have wide latitude to discuss and draw inferences from the evidence at trial.' " (*People v. Wilson* (2005) 36 Cal.4th 309, 337.) Except for situations with expert testimony, "jurors are permitted to rely on their own common sense and good judgment in evaluating the weight of the evidence presented to them." (*People v. Venegas* (1998) 18 Cal.4th 47, 80; see *People v. McKinnon* (2011) 52 Cal.4th 610, 670 ["We 'credit jurors with intelligence and common sense.' "].) As for reviewing courts, "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) And, "[i]n conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v. Frye* (1998) 18 Cal.4th 894, 970.)

We think the topic of credit card fraud and the ways it can be facilitated by identity theft is no longer so arcane that expert testimony is required to make it comprehensible. The topic is widely addressed in print, as well as television commercials and programs, and can now be treated as common knowledge. The prosecutor was simply asking the jurors to call upon that knowledge and make a reasonable extrapolation. Strictly speaking, the solicited extrapolation may have exceeded the evidence, but the prosecutor's remarks did not cross into misconduct. (E.g., *People v. Hill* (1998) 17 Cal.4th 800, 819; *People v. Wharton* (1991) 53 Cal.3d 522, 567.)

As for the remaining instances of alleged misconduct, defendant submits he should escape the forfeiture rule because of the strategically egregious nature of the misconduct,

8

and, if that fails, because his trial counsel failed to interpose a timely objection to the misconduct.  These efforts are unavailing.

Defendant sees misconduct in the prosecutor advancing the "incorrect legal theory" already discussed, that mere knowledge establishes aiding and abetting.  But we think the jury recognized the prosecutor's argument was just that, argument, and that the law to be applied came in the form of the court's instructions.  The jury was instructed with CALCRIM No. 200 that "You must follow the law as I explain it to you . . . .  If . . . the attorneys' comments on the law conflict with my instructions, you must follow my instructions."  The prosecutor reiterated the point:  "the judge . . . has the final say and the only say on what the law is."  " 'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' "  (*People v. Centeno* (2014) 60 Cal.4th 659, 676.)  This presumption is especially potent here, for the jury did not convict defendant of another illegal possession, that of stolen property.  (For this reason we do not address instances of alleged misconduct directed at this charge.)

Defendant asserts that the prejudicial consequences of this "incorrect legal theory" are that the prosecutor thereby "shifted the burden of proof, undercut the presumption of innocence and urged improper inferences."  And that the prosecutor also "misrepresented the law," and, indeed, "relied heavily on gender-based stereotypes in arguing that it was appellant, not Barros, who was responsible for the items found in the home."  Defendant is putting the worst construction on the prosecutor's remarks.  However, having carefully reviewed the entirety of the prosecutor's argument, we think it exceedingly unlikely that the jury viewed those remarks in the same manner.  (*People v. Frye, supra* 18 Cal.4th 894, 970; *People v. Samayoa, supra,* 15 Cal.4th 795, 841.)  On the contrary, they were within the prosecutor's " 'wide latitude to discuss and draw inferences from the evidence at trial.' "  (*People v. Wilson, supra,* 36 Cal.4th at p. 337.)  In short, the remarks cannot fairly be characterized as improper.

9

The prosecutor was not "undercutting" the presumption of innocence by arguing "that presumption is lifted as soon as you believe sufficient evidence has been presented to you." The context makes clear that "sufficient evidence" means the evidence the prosecutor had presented, and believed, that proved defendant's guilt beyond a reasonable doubt. The prosecutor was only asking the jury to agree with this conclusion. She was not telling the jury the presumption ceased to apply once the prosecution had presented *any* evidence. Nor was she, as occurred in *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1408, telling the jury that the presumption ended before the jury deliberated. This was not misconduct. (*People v. Booker* (2011) 51 Cal.4th 141, 185; *People v. Panah* (2005) 35 Cal.4th 395, 463.)

It is also pertinent to note that the prosecutor's remarks about whether defendant was an aider and abettor was only her fall-back argument. We conclude that, even if appropriate and timely objection had preserved the issue for review, no misconduct occurred. Moreover, because there was no misconduct, trial counsel was not ineffective for not objecting to the prosecutor's proper argument.

## DISPOSITION

The judgment of conviction is affirmed.

         _____

         Richman, J.

We concur:


_____

Kline, P.J.


_____

Stewart, J.


A143146; *P. v. Jasper*